NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0341n.06

Case No. 24-5225

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 29, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| MICHAEL BENANTI, | ) | |
|     Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Michael Benanti and his co-defendant committed a series of bank robberies and other crimes from 2014 to 2015. A jury convicted Benanti of twenty-three offenses, including robbery, kidnapping, and carjacking. We affirmed his convictions after he sought to overturn them based on the district court's denial of his motions to suppress evidence. Benanti subsequently filed a habeas petition under 28 U.S.C. § 2255 seeking to vacate on multiple grounds. The district court granted his request to vacate several of his 18 U.S.C. § 924(c) convictions based on *United States v. Davis*, 588 U.S. 445 (2019), and corrected his sentence accordingly. But it denied his remaining § 2255 claims. We denied Benanti a certificate of appealability to challenge the partial denial of his § 2255 petition. That leaves the direct appeal of the amended criminal judgment for our consideration. Because each of Benanti's arguments fail, we AFFIRM.

## I.

*A. Factual Background*

The facts underlying Benanti's crimes were summarized in this court's prior decision affirming his original convictions. *See United States v. Benanti*, 755 F. App'x 556, 558–59 (6th Cir. 2018). We therefore limit our discussion here to the facts pertinent to the issues raised in this appeal.

From 2014 to 2015, Michael Benanti and his co-defendant, Brian Witham, committed several kidnappings and bank robberies across Pennsylvania, Connecticut, Tennessee, and North Carolina. The two men typically used the same modus operandi for these crimes—they would kidnap bank employees or executives, hold family members of the employees and executives hostage, and compel the employees and executives to obtain money from the banks' vaults.

Benanti and Witham's crime wave came to an end in late 2015. In September 2015, the North Carolina State Highway Patrol ("NCSHP") attempted to stop Benanti and Witham on an area highway. But, briefly after pulling over, the two men managed to escape on foot. Then, in November 2015, officers observed Benanti and Witham leave 380 Allison Drive in a Nissan Pathfinder SUV. Federal Bureau of Investigation ("FBI") Special Agent Jeff Blanton notified NCSHP Trooper Greg Reynolds that the men driving the Pathfinder were bank-robbery suspects who had fled from authorities in September. After observing that the vehicle had a stolen tag, Reynolds pulled over the Pathfinder. Benanti exited the passenger side of the SUV, but Witham sped off and left him behind.

Reynolds recognized similarities between the September and November incidents. For example, both vehicles stopped only reluctantly, both vehicles pulled over to the shoulder of the road quickly before driving off again, the passenger door of both vehicles opened, and an occupant

of both vehicles had similar physical characteristics—white, heavy-set, and a bald spot on the back of his head. Based on this information, Reynolds arrested Benanti for the stolen tag on the Pathfinder and for offenses relating to the September flight from the police.

On November 25, 2015, FBI Special Agent Rory Poynter drafted an affidavit summarizing the facts supporting a search warrant for 380 Allison Drive. Officers executed the search warrant on November 25 and 26, 2015.

### B. Procedural Background

#### 1. Trial and Sentencing

Benanti was charged federally, and a jury convicted him of twenty-three counts: conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(b)(1), (2), and (3) (Count One); possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two); attempted bank extortion, in violation of 18 U.S.C. § 2113(a) (Counts Three and Seventeen); use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Four, Six, Eight, Eleven, Thirteen, Fifteen, Eighteen, Twenty, and Twenty-Two); carjacking, in violation of 18 U.S.C. § 2119 (Counts Five, Twelve, and Nineteen); kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Counts Seven, Fourteen, and Twenty-One); felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g) (Counts Nine, Sixteen, and Twenty-Three); and armed bank extortion, in violation of 18 U.S.C. § 2113(a) (Count Ten).

At Benanti's original sentencing, the district court calculated the Guidelines range for his thirteen non-§ 924(c) convictions—that is, robbery, extortion, carjacking, kidnapping, and felon-in-possession—as life imprisonment, based on his total offense level of 43 and criminal history category of VI. Adding in Benanti's § 924(c) convictions—which required the court to convert the life sentences to 470 months to apply the mandatory consecutive sentences—his aggregate

Guidelines range for all twenty-three convictions was 3,230 months.

The district court overruled Benanti's objection to the application of the ransom-demand enhancement contained in U.S.S.G. § 2A4.1(b)(1), which had increased his base offense level by six. Benanti's classification as an armed career criminal required that his criminal history category be set to VI. The district court ultimately sentenced Benanti to four consecutive life sentences plus 155 years.

Benanti's procedural history following the district court's judgment is complex.

### 2. *Direct Appeal*

On direct appeal, Benanti challenged the district court's denial of his motions to suppress evidence. *Benanti*, 755 F. App'x at 559–60. Specifically, Benanti argued that his arrest and the search warrant for 380 Allison Drive lacked probable cause. *Id.* We affirmed his convictions, holding that probable cause supported his arrest and the search warrant. *Id.* We also concluded that the district court did not err in denying Benanti's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), because he failed to make a substantial showing that the search warrant affidavit contained reckless or knowing falsehoods. *Benanti*, 755 F. App'x at 560.

### 3. *Post-Conviction Proceedings*

Next, Benanti filed a habeas petition under 28 U.S.C. § 2255. Relevant here, the habeas petition proceeded as a miscellaneous action on the district court's civil docket, with a separate case number from the criminal case. The district court granted the petition in part and denied it in part. In particular, the district court entered an order vacating seven of Benanti's ten § 924(c) convictions based on the Supreme Court's invalidation of the violent felony definition in the statute's residual clause in *United States v. Davis*, 588 U.S. 445 (2019). To account for this change in conviction status, on January 24, 2022, the district court also entered an amended judgment in

Benanti's criminal case, correcting his sentence to one life term plus 55 years.[1]

On January 25, 2022, Benanti filed a notice of appeal ("NOA") and a motion for a certificate of appealability ("COA") to challenge the partial denial of his § 2255 motion. The NOA was docketed in the habeas case only. The district court denied his COA application, and we affirmed. *Benanti v. United States*, No. 22-5063, 2022 WL 18461466, at *6 (6th Cir. Aug. 11, 2022), *cert. denied*, 143 S. Ct. 854 (2023). And in January 2024, we denied his application for permission to file a second or successive petition. *In re Benanti*, No. 23-5264, 2024 U.S. App. LEXIS 177, at *4 (6th Cir. Jan. 3, 2024).

On February 13, 2024, Benanti filed an amended NOA. The amended NOA explained that Benanti never received a copy of the January 2022 amended judgment in the criminal case and "was never af[f]orded the opportunity to appeal the new sentence." (Case No. 20-cv-194, Am. NOA, R. 65, PageID 2015).[2] We concluded that Benanti had exhausted his appeal of the partial denial of his § 2255 petition. *Benanti v. United States*, No. 24-5133, 2024 U.S. App. LEXIS 5584, at *3 (6th Cir. Mar. 7, 2024). But we also deemed it "apparent" that Benanti's February 2024 NOA aimed to appeal the "amended criminal judgment entered on January 24, 2022." *Id.* Thus, we instructed the district court to docket the NOA filed on February 13, 2024, in his criminal case. *Id.* After this correction of the docket, the present appeal followed.

## II.

The district court's amended criminal judgment following a successful § 2255 petition is an immediately appealable final judgment. *Andrews v. United States*, 373 U.S. 334, 338–40 (1963) (interpreting 28 U.S.C. § 2255(d)); *United States v. Burton*, 802 F. App'x 896, 902–03 (6th Cir.

---

[1] The district court also ordered Benanti to obtain leave of court to file any future motions due to his "numerous frivolous filings in both his civil and criminal cases." (Mem. Op. & Order, R. 345, PageID 21011).
[2] Case No. 20-cv-194 is Benanti's habeas case.

2020). This is because the amended judgment "is a previously unreviewed aspect of [the defendant's] criminal case." *Ajan v. United States*, 731 F.3d 629, 630 (6th Cir. 2013). Therefore, the defendant can "challenge *the relief granted—i.e.*, whether the relief was appropriate under § 2255, whether the new sentence was in conformity with the Constitution or Sentencing Guidelines, etc." *Id.* (citation modified) (quoting *United States v. Hadden*, 475 F.3d 652, 664 (4th Cir. 2007)); *see also United States v. Nichols*, 897 F.3d 729, 736 (6th Cir. 2018) (noting that a defendant may "challenge[] the correctness of his corrected sentence"). The government does not contest that Benanti is "entitled to direct review of [the] judgment." (Appellee's Br., ECF 34, 44). Rather, the government challenges the scope of our review based on claims that Benanti could have raised earlier but did not or that he previously litigated. We discuss these non-jurisdictional issues as they pertain to each argument in Section IV below.

Because Benanti challenges the legality of his amended criminal sentence, we have jurisdiction to review his appeal.

**III.**

Preliminary to our discussion on the merits, we address the government's timeliness challenge. The government contends that Benanti's appeal of the criminal judgment should be dismissed as untimely because he filed his NOA on February 13, 2024, almost two years after the district court entered its amended judgment in his criminal case. Benanti counters that his January 25, 2022, NOA was for both the partial denial of his § 2255 motion and the amended judgment entered in his criminal case, as evidenced by the facts that the NOA (1) identified specific orders from his criminal case and (2) included his criminal case number. Yet it was docketed only in his habeas case. And he contends that we recognized his criminal appeal as timely in our March 2024

order directing a correction to the docket.[3]

Federal Rule of Appellate Procedure 4(b)(1)(A)(i) provides that a defendant must file an NOA within fourteen days after "the entry of either the judgment or the order being appealed." Rule 4(b) is a non-jurisdictional claims-processing rule. *See United States v. Jackson*, 995 F.3d 476, 483 (6th Cir. 2021) (citing *United States v. Gaytan-Garza*, 652 F.3d 680, 681 (6th Cir. 2011) (per curiam)). But if the government raises a valid timeliness issue, we treat this rule as mandatory and ordinarily are "obliged to dismiss the appeal." *Id.* at 482. Here, the government has raised the issue, but rather than showing that Benanti's January 2022 NOA did not encompass the amended criminal judgment, the government advances the conclusory position that Benanti's claim that the criminal judgment was part of the NOA is uncorroborated. The bulk of the government's argument centers on Benanti's February 2024 amended NOA, which all appear to agree would be untimely standing alone.

Given these gaps in analysis in the face of the noted procedural complexities and because Benanti's appeal fails on the merits, we forgo resolving this question. As it stands, whether Benanti's notice was untimely is inconsequential to our ruling. For even assuming timeliness, Benanti's appeal fails. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."). So we assume—without deciding—that his notice was timely to appeal the amended criminal judgment. *See Ahart v. Bradshaw*, 122 F. App'x 188, 192 (6th Cir. 2005) (declining to resolve

---

[3] After oral argument, Benanti filed a Motion to Accept Filing of Supplemental Brief along with his Supplemental Brief. We need not decide whether Benanti timely appealed his amended criminal judgment, so we deny his motion as moot.

timeliness dispute because habeas petition failed on the merits); *United States v. Vázquez-Rosario*, 45 F.4th 565, 569 (1st Cir. 2022) (same).

We therefore proceed to the merits.

**IV.**

Benanti raises three issues—two pertaining to sentencing and one concerning his convictions. First, he challenges his armed-career-criminal classification based on *Borden v. United States*, 593 U.S. 420 (2021), an argument that he raised in his reply to the government's response to his habeas petition. Second, he asserts that the district court improperly applied the ransom-demand enhancement because his demands did not reach a third party, an issue that he only raised at his original sentencing. Third, he argues that his arrest and the search warrant for 380 Allison Drive lacked probable cause, both of which he challenged in the direct appeal of his original judgment and addressed in his ineffective-assistance-of-counsel claims in his habeas petition. We address each claim in turn.

*A. Armed-Career-Criminal Classification*

Benanti first asserts that the district court's application of the Armed Career Criminal Act ("ACCA") enhancement was improper based on *Borden*. In particular, he suggests that his robbery conviction depended on reckless intent, while *Borden* held that a crime with a mens rea that can be proven by showing recklessness does not qualify as a violent offense under the ACCA. The Supreme Court decided *Borden* after Benanti's first appeal, while his habeas petition was pending before the district court. In his habeas reply brief, Benanti argued that "priors do not count as violent felon[ies] because of the consideration of recklessness" based on *Borden*. (Case No. 20-cv-194, Reply to Gov't Resp., R. 19, PageID 841).

Citing a line of cases that has evolved from our decision in *United States v. McKinley*, 227 F.3d 716 (6th Cir. 2000), the government argues that Benanti has waived this challenge because *Borden* did not provide any new legal arguments that Benanti could not have raised in his first appeal. Under the "law-of-the-case, appellate-forfeiture rule" set forth in *McKinley* and its progeny, says the government, Benanti is foreclosed from making the argument now. *United States v. Pembrook*, 79 F.4th 720, 729 (6th Cir. 2023). Benanti counters that the appellate-forfeiture doctrine does not apply to a sentence correction following a successful § 2255 petition because the resulting sentence follows the district court's statutorily required action to vacate the previous sentence and set aside the old judgment. According to Benanti, this means he gets a fresh start and can challenge any aspect of his sentence based on the new judgment.

    *1. Appellate-Forfeiture Doctrine*

The appellate-forfeiture doctrine provides that "[a]n appellant in a second appeal cannot raise in that second appeal an error that could have been, but was not, raised and resolved in the first appeal." *Pembrook*, 79 F.4th at 730. We recognize exceptions where "the moving party [was] either unable to assert the issue initially or the issue only became logically relevant following remand." *United States v. Boudreau*, 564 F.3d 431, 435 n.1 (6th Cir. 2009). But does it matter if the second appeal does not follow a remand? And assuming it does not—meaning that we treat an appeal of a new sentence the same whether post-habeas or post-remand, so appellate forfeiture applies—if the district court leaves in place its original sentences for convictions that were untouched by the partially successful habeas petition, does a change in the law since the petitioner's first criminal appeal open the door to one of the exceptions?

Our precedents do not squarely address these questions. We ordinarily apply appellate forfeiture in cases involving a second appeal following resentencing on remand. *See, e.g.*,

*Pembrook*, 79 F.4th at 730 (explaining that "[t]he cases applying the appellate-forfeiture doctrine in the sentencing context all have . . . four stages split down the middle by an appellate judgment ordering resentencing"); *McKinley*, 227 F.3d at 718–19 (concluding that the government waived its firearm-enhancement argument by not raising it in the first appeal before resentencing on remand). Applying the doctrine under those circumstances makes sense because a party who chooses not to raise an issue on direct appeal leaves us with no "notice" or "opportunity to dispose of [the] issue as part of the [first] appellate proceeding." *Pembrook*, 79 F.4th at 734 (second alteration in original) (citation omitted). Importing that reasoning to the post-habeas setting is not as straightforward. And we have found no cases where we have applied forfeiture or waiver across the direct appeal/post-habeas appeal boundary.

The procedural posture here differs from the run-of-mine case applying the doctrine in that the district court, on its own, vacated and set aside the judgment that sparked the first appeal—not at the direction of an appellate court ordering remand. *See Ajan*, 731 F.3d at 631. True, Benanti's amended criminal judgment reimposed the same convictions and sentences as the original judgment on the counts unaffected by the *Davis* error. So, from that perspective, Benanti had had the opportunity to raise any errors concerning the sentencings on those counts in his direct appeal. But in other contexts, the intervening judgment seems more meaningful. For instance, in *Magwood v. Patterson*, the Supreme Court observed that a habeas petition challenging a new sentence resulting from a successful § 2254 petition is not second or successive because the petitioner "challenges a new judgment for the *first time*." 561 U.S. 320, 324 (2010) (emphasis added). Although Benanti's challenge does not arise from a second or successive petition, he, too, "appeal[s] a new criminal sentence" for the first time. *See Ajan*, 731 F.3d at 631 (citation omitted) (explaining that "the *Magwood* rule . . . applies with equal force to § 2255"). In *Ajan*, where a

successful habeas petitioner, who was unsuccessful in the direct appeal of his criminal judgment, appealed his new criminal judgment following a partially successful habeas petition, the scope of his appeal did not appear to be limited by the fact that "the district court reimposed the same sentences on the undisturbed counts." *Id.* at 632 n.2; *see also Magwood*, 561 U.S. at 339 ("An error made a second time is still a new error."). Considering this murky landscape, we are hesitant to extend the doctrine to these facts.

Moreover, the government's reliance on *Wright v. Spaulding*, 939 F.3d 695 (6th Cir. 2019), does not dissuade us from this course. There, we explained that "[a] new case matters only . . . because of the new legal arguments it makes available." *Id.* at 705 (emphasis omitted). Applying *Wright*'s reasoning, the government argues that Benanti has not identified any new legal arguments from *Borden* that warrant relief here. However, our holding in *Wright* is inapposite. Pointing to a new Supreme Court ruling, the petitioner there filed a new petition for relief in the venue where he was held rather than the venue where he was sentenced—in an apparent attempt to avoid the second-or-successive-petition bar in his sentencing district. *Id.* at 697. Our analysis focused on whether the saving clause of 28 U.S.C. § 2255(e) somehow opened the door for the petitioner to pursue relief based on the aforementioned new ruling. *Id.* at 697, 705. Some of the discussion in *Wright* considered whether the petitioner previously had a "reasonable opportunity to make his argument any earlier." *Id.* at 703 (citation modified). But our query was in service of a different goal—to see whether the petitioner's actions squared with our saving-clause jurisprudence. Here, Benanti does not seek to file another habeas petition but rather to appeal an amended judgment following his partially successful § 2255 petition. *See Ajan*, 731 F.3d at 630. *Wright*, therefore, offers us little guidance.

*2. Harmless Error*

We turn, then, to the district court's corrected sentence in which it left undisturbed Benanti's remaining convictions and accompanying sentences, including the ACCA enhancement. The government contends that Benanti's *Borden* claim fails even if we were to review it because any error was harmless. In a direct appeal of a criminal sentence, we review de novo whether a predicate offense is a violent felony under the ACCA. *United States v. White*, 58 F.4th 889, 893 (6th Cir. 2023). But if the defendant fails to object on this basis at sentencing, we review for plain error. *Id.* Plain-error review applies "[e]ven where a new rule of law is at issue." *Id.* at 894 (alteration in original) (quoting *Henderson v. United States*, 568 U.S. 266, 272 (2013)).

Here, under either plain-error or de novo review, we agree with the government that any error in applying the ACCA enhancement was harmless. So we need not decide whether Benanti actually forfeited his *Borden* argument. Although the ACCA enhancement increased Benanti's criminal-history category from IV to VI, the Sentencing Guidelines recommend life imprisonment for defendants with a total offense level of 43, regardless of the criminal-history category. So removing the enhancement would have no practical effect on Benanti's sentencing exposure. And any error in classifying Benanti as an armed career criminal was harmless. *See United States v. Castro*, 960 F.3d 857, 867 (6th Cir. 2020); *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019); *see also United States v. Butts*, 40 F.4th 766, 774–75 (6th Cir. 2022) (applying harmless error review sua sponte where we were "certain that the district court could not have imposed a lower sentence even if the court had not applied the career-offender enhancement").

Bucking this result, Benanti argues that his offense level could decrease to 38. But his argument is not straightforward; only if we also accept that the district court erroneously applied the ransom-demand enhancement would his offense level decrease and his Guidelines range

change from life imprisonment to 324 to 405 months. Such bootstrapping will not work because, as we discuss below, we reject Benanti's objection to the ransom-demand enhancement. Therefore, correcting for the claimed ACCA-application error would have no impact on his Guidelines range.

### B. *Ransom-Demand Enhancement*

Next, Benanti argues that the district court erred in applying the six-level ransom-demand enhancement under U.S.S.G. § 2A4.1(b)(1) because he did not make any demands on a third party. Although Benanti objected to the application of the ransom-demand enhancement at his original sentencing, he did not raise this argument in his direct appeal. Once again, the government asserts appellate forfeiture, arguing that Benanti could have raised the issue in his first appeal but did not. But as discussed above, application of the doctrine under these circumstances remains an unresolved issue in our case law. And we need not resolve it here, because Benanti's argument fails regardless. So we move to the merits of Benanti's ransom-demand-enhancement argument below.

Because we treat the amended judgment as an entirely new aspect of Benanti's criminal case, we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Medlin*, 65 F.4th 326, 331 (6th Cir. 2023). "Included in this de novo review is a district court's interpretation and application of the [S]entencing [G]uidelines." *Id.* (citation modified).

Benanti largely bases his ransom-demand argument on our sister circuit's decision in *United States v. Reynolds*, 714 F.3d 1039 (7th Cir. 2013). In *Reynolds*, the Seventh Circuit concluded that "§ 2A4.1(b)(1) may be applied only if kidnappers' demands for 'money or other consideration' reach someone *other* than the captured person." *Id.* at 1044. We have previously

noted several other circuits' holdings that the ransom-demand enhancement may be applied only if a ransom demand is directed towards a third party. *See United States v. Messer*, 71 F.4th 452, 461 (6th Cir. 2023) (collecting cases). However, we have not had occasion to address the merits of the third-party issue within this circuit, and we need not address it today. For even were we to assume that the enhancement requires a demand on a third party, that requirement is met here.

We agree with the district court that Benanti and his co-defendant's ransom demands involved third parties. Indeed, Benanti and Witham "initially held entire families captive . . . [and] continued to hold the bank employees' families against their will, while forcing the employees themselves to rob or seek to rob their respective banks." (Sentencing Tr., R. 252, PageID 19037). And, as the probation officer noted in the presentence report, the co-defendants employed the same tactic against at least three bank employees or executives and their families. In those instances, the family members were held captive, and the employees or executives were the third parties to whom the ransom demands were made.

Moreover, *Reynolds* does not bind us and is factually distinguishable from the circumstances here. In *Reynolds*, a group kidnapped a drug dealer and demanded money or drugs from the dealer in exchange for his release. 714 F.3d at 1041, 1045–46. The record reflected that no one but the dealer knew about these demands before he escaped. *Id.* at 1046. Here, however, Benanti and Witham's crimes involved both the families of the bank employees and executives *and* additional employees at the targeted banks who learned about their demands in real time.

As such, even accepting as viable the third-party argument here, Benanti's challenge fails.

*C. Issues Raised in Previous Appeal*

Finally, Benanti makes two arguments that he already raised in the direct appeal of his original sentence. Specifically, he argues that law enforcement lacked probable cause for both his

arrest and the search of 380 Allison Drive. The government argues that our prior decision on these issues is the law of the case, so we may not consider Benanti's attempts to reprise them here. Benanti does not dispute that he argued both claims previously. Instead, he again argues that he can challenge any facet of the amended criminal judgment, even issues about his underlying convictions that he litigated in his first appeal.

### 1. Law-of-the-Case Doctrine

The law-of-the-case doctrine "commands that 'findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation.'" *United States v. Obi*, 132 F.4th 388, 395 (6th Cir. 2025) (citation omitted). We apply this doctrine when three factors are satisfied: (1) "the statement . . . contributed to the judgment," (2) "the panel . . . intended to rest the judgment (if necessary) on that conclusion," and (3) "the panel . . . considered the issue and consciously reached a conclusion about it." *Id.* at 396 (citation modified). Whether to apply the law of the case is discretionary. *See United States v. Cunningham*, 679 F.3d 355, 377 (6th Cir. 2012).

At first blush, our prior decision concluding that Benanti's arrest and the 380 Allison Drive search were constitutional would appear to fit the bill. But our post-habeas jurisprudence gives reason for pause. Benanti's previously-litigated arguments concern his underlying convictions. In *King v. Morgan*, we extended *Magwood* to broadly conclude that, in addition to his new sentence, a petitioner can "challenge his undisturbed conviction" following a new judgment without triggering second or successive requirements. 807 F.3d 154, 156 (6th Cir. 2015). In doing so, we explained that *Magwood*'s "judgment-based reasoning naturally applies to all new judgments, whether they capture new sentences or new convictions *or merely reinstate one or the other*." *Id.* at 157 (emphasis added). As a practical consideration, we noted that, sometimes, separating claims

related to the conviction from those related to the new sentence may prove a difficult task. *Id.* at 158. And beyond discussing what aspects of the judgment are reviewable, we observed that "the law-of-the-case doctrine likely would not apply due to the intervening judgment." *Id.* at 160. So we will not apply it here. *See Cunningham*, 679 F.3d at 377.

That said, separating Benanti's conviction-related arguments from those pertaining to his sentence is relatively straightforward here. They do not overlap, and we substantively ruled on the issues that he raises about his convictions in his first appeal. *See Benanti*, 755 F. App'x at 559–60. Moreover, though not binding here, we reviewed Benanti's COA application on similar issues and determined that they were not worthy of appeal. *See Benanti*, 2022 WL 18461466, at *6. Nevertheless, given *King*'s observation that addressing the merits of a previously-litigated claim "likely will not be difficult to sort out," we take up the task here. 807 F.3d at 160; *see also Magwood*, 561 U.S. at 340 n.15 ("It will not take a court long to dispose of such claims where the court has already analyzed the legal issues.").

### 2. Probable Cause for Arrest and Search Warrant

As noted, Benanti's arguments regarding his arrest are nearly identical to those that he made on direct appeal of his convictions. For example, he contends that Reynolds lacked probable cause to arrest him. According to Benanti, Blanton had "almost no basis" for his statement that the occupants of the vehicle in November 2015 were the bank-robbery suspects. (Appellant's Br., ECF 23, 38). Without this statement, says Benanti, the facts that he is a white male and the two car chases had certain similarities were not enough to support probable cause for his arrest. In his direct appeal, Benanti asserted that "Reynolds knew only that Benanti had been a passenger in an SUV with stolen plates." *Benanti*, 755 F. App'x at 559. We concluded that Reynolds had probable cause to arrest Benanti, crediting Blanton's statement that the two men were from the September

chase and Reynolds's observations about the similarities between the September and November chases. *Id.*

The same is true for Benanti's challenges to the search warrant. Here, he again argues that Poynter's affidavit included a false identification; Poynter failed to disclose that witnesses to the April 2015 robbery identified a potential third suspect; and the affidavit did not disclose that these same witnesses disagreed about the race of one of the three suspects. Considering these same points, we previously concluded that Benanti "failed to show" any "knowing or reckless falsehoods" and that "the magistrate judge could easily have found probable cause" irrespective of the challenged statements and omissions. *Id.* at 560. Benanti also previously argued "that the affidavit gave the magistrate judge no reason to think that the two abductions and bank robberies [in Knoxville] were both committed by the same two men." *Id.* We held that the search warrant provided ample information connecting Benanti and Witham to the kidnappings and robberies. *Id.* Addressing that same issue, he now asserts that the affidavit "merely presented general facts" and repeatedly mentioned "two white males" without explaining the connection between 380 Allison Drive and the robberies. (Appellant's Br., ECF 23, 31–32).

We see no reason to stray from our prior conclusions here. Critically, Benanti has provided no new information to justify a different result, even without applying the law-of-the-case doctrine.

**V.**

We AFFIRM.